IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| TAMMY CAPERTON,                ) | |
| ) | |
|     Plaintiff,                ) | |
| ) | **Civil Action No.** |
| v.                ) | **3:09-cv-1973-KOB** |
| ) | |
| MICHAEL J. ASTRUE                ) | |
| COMMISSIONER OF                ) | |
| SOCIAL SECURITY,                ) | |
| ) | |
|     Defendant.                ) | |

### MEMORANDUM OPINION

### I. INTRODUCTION

    The Claimant, Tammy V. Caperton, filed applications for Disability Insurance benefits and Supplemental Security Income payments on December 27, 2006, alleging disability commencing on August 24, 2006 because of anxiety; asthma; diabetes; high blood pressure; chronic obstructive pulmonary disease; sleep apnea; degenerative joint disease; pulmonary artery hypertension; heart problems; depression; and pain in her back, neck, and feet. The Commissioner denied the claims. The Claimant filed a timely request for a hearing before an Administrative Law Judge. The ALJ held a hearing on February 12, 2009. In a decision dated March 17, 2009, the ALJ found that the Claimant was not disabled within the meaning of the Social Security Act, and therefore was ineligible for Disability Insurance Benefits and Supplemental Security Income payments. On August 6, 2009, the Appeals Council denied the Claimant's request for review. The Claimant has exhausted her administrative remedies, and this

court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

In this appeal, the Claimant presents two issues for review. The first is whether the ALJ failed to properly articulate good cause for according less weight to the opinion of treating physician Dr. Steven Wampler. The second issue presented for review is whether the ALJ properly considered the combined effects of the Claimant's multiple impairments.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standard and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Id.* at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only

look to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV.  LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1)  Is the person presently unemployed?

(2)  Is the person's impairment severe?

(3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. I?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520 and 416.920.

The Claimant bears the burden at the second step of the sequential evaluation of proving that she has a severe impairment or combination of impairments. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "An impairment or combination of impairments is not severe if it does not

3

significantly limit [the Claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a), [20 C.F.R.§ 404.921 (a)], *see also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel*, 800 F.2d at 1031 (11th Cir. 1986); *see also Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

The ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ must give the testimony of a treating physician substantial or considerable weight unless he shows "good cause" to the contrary. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists where the opinion of the treating physician is accompanied by no objective medical evidence, is wholly conclusory, or is contradicted by the physician's own treatment records. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

## V. FACTS

The Claimant was thirty-three years old at the time of the administrative hearing decision. She has a high school education, she is married, and has two children. Her husband and son both receive SSI. (R. 38). Her past work experience includes employment as a fast food cashier, a nursing home cook, and a sewing machine operator. (R.121). According to the Claimant, COPD, asthma, degenerative joint disease, vertigo, high blood pressure, diabetes, coronary artery disease, and "nervous breakouts" prevent her from working. (R. 41). The Claimant testified that

these impairments cause pain, tiredness, sleeplessness, and breathing problems. (R. 41).

The Claimant has a history of treatment for multiple impairments. Records from Dr. J. Gregory Adderholt, a neurologist, indicate that the Claimant suffered neck pain from degenerative disc disease in 2003. (R. 167). A 2003 MRI of her cervical spine showed a moderate bulging annulus fibrosus at C6-7. (R. 169). In 2004, Dr. Surender K. Sandella, a cardiologist, concluded that the Claimant abused tobacco and had atypical chest pain, atherosclerotic cardiovascular disease, hypertension, and diet-controlled Type II diabetes mellitus. (R. 173). On July 31, 2006, Dr. Robert Rausch, a radiologist, performed an MRI of the Claimant's lumbar spine and sacrum. The MRI came back "normal." (R. 182).

Dr. Stephen Collier, an internist, treated the Claimant from 2002 until 2006. On August 15, 2006, Dr. Collier noted that the Claimant's COPD was "fairly well managed" with Advair, Singulair, and Albuterol. (R. 193). During the Claimant's last visit to Dr. Collier on November 15, 2006, the doctor concluded that the Claimant had chronic neck and shoulder pain, secondary to degenerative disc disease and degenerative joint disease, as well as COPD, sleep apnea, depression, anxiety, hyperlipidemia, and Type II diabetes mellitus. Dr. Collier noted that the Claimant's level of pain control was "reasonably adequate." (R. 185).

On October 27, 2006, the Claimant visited Dr. Edsel Holden at The Lung Center for an evaluation of pulmonary hypertension and a sleep evaluation. Dr. Holden noted that the Claimant smoked up to one-and-a-half packs of cigarettes per day. Dr. Holden observed that the Claimant's gait was normal and that she moved all extremities without difficulty. Dr. Holden provided the Claimant with smoking cessation materials and prescribed Chantix, Advair, and Spiriva. (R. 346). Dr. Holden referred the Claimant to Dr. S.R. Ahmed, an endocrinologist.

On December 13, 2006, Claimant presented to Eliza Coffee Memorial Hospital complaining of shortness of breath and wheezing. Her chest x-ray came back "normal." (R. 465). Dr. Eniola O. Otuseso diagnosed the Claimant with uncontrolled diabetes, COPD exacerbation, obesity, degenerative join disease, hypercholesterolemia, and nicotine abuse. He also noted a "question of noncompliance with medication." Dr. Otuseso discharged the Claimant the following day. (R. 464-465).

On January 28, 2007, the Claimant returned to Eliza Coffee Memorial Hospital complaining of chest pain. An EKG showed sinus rhythm but was otherwise normal. Dr. Joel Ranier performed a left heart catherization and a coronary arteriogram on the Claimant. Dr. Ranier concluded that the Claimant had "[n]ormal left venticular function" and "normal coronary arteries." He noted that he did not see any indication of significant coronary artery disease and did not believe her pain was ischemic. (R. 505).

Per Dr. Holden's referral, the Claimant saw Dr. S.R. Ahmed, an endocrinologist, on February 13, 2007 for an evaluation of her diabetes and complications. The Claimant's blood pressure was 110/70, and her chest was clear. Dr. Ahmed noted that the Claimant had "multiple medical problems," including diabetes, COPD, asthma, depression, anxiety, and hyperlipidmia. He recommended better diet, exercise, weight loss, and improved lifestyle measures. (R. 538).

On February 21, 2007, Dr. Bonnie L. Atkinson, a licensed psychologist, performed a comprehensive consultative psychological evaluation on the Claimant. Dr. Atkinson based her evaluation on Dr. Collier's medical records, an interview with the Claimant's mother, and a clinical interview with the Claimant. The Claimant admitted to smoking about a pack of cigarettes a day since age seventeen. The Claimant had no history of psychiatric treatment. The

6

Claimant reported panic and anxiety attacks, mood swings, and depression. Dr. Atkinson found "no evidence of hallucinations, ideas of reference, phobias, obsessions, compulsions or other abnormal features," and Claimant denied having explosive disorder, impulse control disorder, multiple personality, post traumatic stress, rape trauma, schizophrenia, sexual or physical abuse. The Claimant also reported holding a job for three-and-a-half years before being fired for absenteeism related to her son's birth. Dr. Atkinson noted that the Claimant has a history of "stable, but sporadic employment." Dr. Atkinson also observed that the Claimant's gait and activity level were "normal"; that "[p]ain behavior was not noted"; that her orientation was appropriate and she was able to maintain sufficient focus for responding to questions; that her thought, concentration, memory functions, and language comprehension were "fair"; that her speech was clear; that she has sufficient judgment to direct or manage her own funds; and that her self-care abilities appear to be within a "normal range." The Claimant told Dr. Atkinson she stayed in bed most of the day and could not dust, sweep, or do dishes, but she can prepare simple meals and performs routine hygiene, grooming, and dressing activities independently. During the evaluation, Dr. Atkinson conducted a mental status exam on the Claimant using an axis diagnosis, which resulted in a prognosis of "Good to Fair." Based purely on psychological data, Dr. Atkinson concluded that "the [C]laimant is likely to be functioning in the slightly below average range" mentally yet exhibited "sufficient judgment to make acceptable work decisions." (R. 547-551).

On January 4, 2008, the Claimant visited Dr. Holden for a follow-up visit. He noted that she had cut back on smoking and smoked about half a pack per day. He again reported that her gait was "normal" and that she "move[d] all extremities without difficulty." Dr. Holden's

impression was that Claimant displayed symptoms of COPD and acute bronchitis. (R. 589-591). During two visits in January and February of 2008, Dr. E.E. Walker, an ear, nose, and throat doctor, diagnosed the Claimant with "left chronic external otitis," "eustachian tube dysfunction," and "peripheral vertigo." (R. 599-600).

Dr. Steven Wampler, a family practitioner, treated the Claimant from February 2007 to February 2009 for monthly check-ups. During this time, Dr. Wampler treated the Claimant for a variety of medical issues, including earaches, itching, sore throats, coughing, congestion, sinusitis, back pain, leg pain, bronchitis, COPD, anxiety, insomnia, and arthritis. In a letter dated November 17, 2008, Dr. Wampler said that the Claimant had "multiple significant health problems," including diabetes, COPD, sleep apnea, asthma, and emphysema. Dr. Wampler concluded that the Claimant "would have a very hard time holding down any type of job due to her multiple health problems." (R. 631). On February 2, 2009, Dr. Wampler completed a Medical Source Opinion form, in which he recorded the following limitations: the Claimant could stand for thirty minutes at one time for a total of two hours in an eight hour workday; walk for fifteen to thirty minutes at a time for a total of one hour in an eight hour workday; and sit for thirty minutes at a time for a total of two hours during an eight hour workday. Dr. Wampler noted "bilateral leg weakness" as the sole clinical finding to support these limitations. Dr. Wampler also concluded that the Claimant should be restricted from climbing, stooping, kneeling, crouching, and crawling. The Claimant could occasionally perform activities that required her to balance or push or pull with either of her legs. The Claimant could also occasionally be exposed to wetness or humidity or work in proximity to moving mechanical parts. The Claimant could frequently drive automotive equipment. However, the Claimant could not work in high, exposed

places; work around vibration; or be exposed to extreme heat or cold, fumes, noxious odors, dusts, mists, gases, or poor ventilation. Dr. Wampler indicated on the form that these conclusions were "based primarily on the claimant's subjective complaints." (R. 661-662).

*The ALJ's Hearing*

The ALJ held a hearing on February 12, 2009. Morris Bramlett appeared as Claimant's attorney. The ALJ first questioned the Claimant. The Claimant testified that her husband, who was unemployed, took care of their two children. According to the Claimant, she and her family support themselves with her husband and son's SSI and food stamps. Her husband completed all of the household chores because the Claimant said that she ran out of breath easily, would wheeze, and have trouble breathing if she dusted or swept. (R. 39). The Claimant said that she left her previous job because it required heavy lifting. The Claimant testified that she drove once or twice a month to doctors' visits and the pharmacy and that her husband accompanied her to the grocery store. (R. 40).

Mr. Bramlett then questioned the Claimant. The Claimant said that her COPD, asthma, degenerative joint disease, vertigo, "nervous breakouts," high blood pressure, and diabetes prevented her from working. The Claimant also reported having coronary artery disease. She said her impairments caused tiredness, pain, and sleeplessness because of back and neck pain. (R. 41). The Claimant testified that she could sit for twenty minutes and stand for ten to fifteen minutes without any pain but could not walk around the block. She said she could walk about 200 to 300 feet before she is out of breath. She said that her diabetes was uncontrolled. (R. 42-43). The Claimant reported that, on a one-to-ten scale, her average daily level of pain was around a seven,

with the pain concentrated in her neck, back, and feet. She said that diabetes and pulmonary hypertension caused her feet to swell "once every few weeks." (R. 44). The Claimant also testified that unstable angina caused weakness, tiredness, and nausea and forced her to recline or lie down for around three hours per day. She said that around ten days per month her symptoms prevented any activity other than meals and using the restroom because she felt "drained with no energy" and had headaches, flu-like pains, and tingling in her feet and hands. The Claimant said her diabetes prevented her from working more than any of her other impairments. (R. 45-46).

Following Mr. Bramlett's questioning of the Claimant, the ALJ reexamined her. The Claimant said that she had cut her smoking back to around five cigarettes a day. The Claimant also testified to suffering panic attacks triggered by nervousness and her children misbehaving.

The ALJ then questioned John William McKinney III, a vocational expert (VE). The VE testified that an individual sharing the Claimant's characteristics and limitations and capable of performing sedentary work (meaning capable of lifting up to ten pounds) could not return to the Claimant's prior work as a cook or sewing machine operator. However, the VE testified that such an individual could perform work in sedentary unskilled occupations, including work as a hand packager, production inspector, and garment folder. The ALJ then asked the VE whether an individual with the age, education, prior work history, training, and limitations of the Claimant as expressed by Dr. Wampler in his February 12, 2009 letter could return to the Claimant's past work or perform any other work in the regional or national economy. The VE responded that such a person would be limited to working a five-hour workday, which would be less than full-time employment. Mr. Bramlett then asked the VE whether someone who had to recline for at least three hours a day, as the Claimant testified she did, would be precluded from working. The

VE responded affirmatively.

*The ALJ's Decision*

On March 17, 2009, the ALJ issued an opinion finding that the Claimant was not disabled within the meaning of the Social Security Act. The ALJ found that the Claimant met the insured status requirements of the Social Security Act through June 30, 2007 and that she had not engaged in substantial gainful activity since her amended onset date. The ALJ found that the Claimant suffered from the following severe impairments: degenerative disc disease of the cervical spine, asthma/chronic obstructive pulmonary disease, hypertension, diabetes mellitus, low back pain, dysthymic disorder, and panic disorder without agoraphobia. However, none of these impairments, either singly or in combination, met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that the Claimant had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following abilities, limitations, and restrictions: "can lift up to ten pounds and stand and walk six hours during an eight-hour workday"; "can sit a total of six hours during a eight-hour workday with no limitations on pushing and pulling with foot or hand control"; "restricted from climbing ladders, ropes, and scaffolds, or work exposure to extreme cold and heat"; "avoid fumes, odors, dusts, gases and poor ventilation"; "restricted from driving"; "can understand, complete and remember simple tasks and instructions during an eight-hour workday with routine breaks"; "able to concentrate for two hours"; "[c]ontact with co-workers, supervisors and the general public should be casual"; and "changes in the workplace should be introduced slowly." The ALJ limited the Claimant to "simple jobs with simple work related decisions." The ALJ found that "the [C]laimant's medically determinable impairments could reasonably be expected to cause the

alleged symptoms; however, the [C]laimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible" because they were inconsistent with her RFC assessment.

The ALJ acknowledged that the Claimant had been diagnosed and treated for COPD and asthma. However, the ALJ concluded that the medical evidence showed that the conditions were not as severe as the Claimant alleged. He noted that the Claimant had been non-compliant with treatment and still smoked. The ALJ said that the Claimant's "failure to stop smoking despite several warnings suggests her symptoms are not as disabling as she has alleged." (R. 14). The ALJ also noted that the Claimant's condition responded well to medication. He pointed out that on August 15, 2006, Dr. Collier noted that the Claimant's COPD was "fairly well-managed" on long-term Advair, Singulair, and Albuterol. (R. 15).

The ALJ also acknowledged that the Claimant had received treatment for degenerative disc disease, diabetes mellitus, high blood pressure, and coronary artery disease. However, the ALJ concluded that the evidence showed that "these conditions d[id] not rise to the level of severity where they could be considered disabling to the [C]laimant." The ALJ pointed out that the Claimant admitted at the hearing that her diabetes was under control and that treatment records from Dr. Wampler indicated that the Claimant's blood pressure was within normal limits. The ALJ said no objective evidence of coronary artery disease existed because "an arteriogram and EKG performed in January 2007 were normal[,] and a chest x-ray showed no radiographic evidence of cardiopulmonary process." Additionally, according to Dr. Ranier, the Claimant had no indication of coronary artery disease or ischemic chest pain.

Although the Claimant alleged disability due to degenerative disc disease, the ALJ found

that "the objective medical evidence" in the record failed to substantiate her contention. (R. 15). The ALJ observed that "[e]xaminations revealed the [C]laimant had normal gait and normal use of the upper and lower extremities."[1] In addition, the ALJ noted that Dr. Atkinson, the psychologist, reported that the Claimant had a normal gait and said the Claimant did not exhibit any "pain behavior." The Claimant could walk, sit in a chair, and pick up a coin.[2] Finally, the ALJ observed that the Claimant's failure to seek the help of a specialist for her back and knee pain indicated that the pain was not as severe as she alleged.

The ALJ next addressed the Claimant's alleged mental health conditions. Dr. Atkinson, using an axis diagnosis and an in-depth interview to evaluate Claimant's level of mental ability, concluded that she possessed "sufficient judgment to make acceptable work decisions" despite any mental impairments. The ALJ gave Dr. Atkinson's opinion concerning Claimant's ability to work despite her alleged mental problems "substantial weight" because it was "consistent with other medical evidence of record and based upon [Dr. Atkinson's] examination of the [C]laimant." (R. 16). The ALJ emphasized that although Dr. Atkinson diagnosed the Claimant with dysthymic disorder and panic disorder, the Claimant had no history of psychiatric

---

[1] Though the ALJ neglected to specify which examinations he was referring to, the court, upon its own review of the medical records, finds that the ALJ's determination is supported by substantial evidence. As explained in fuller detail in Part VI, the medical diagnoses of Dr. Holden, Dr. Walker, and even Claimant's regular treating physician, Dr. Wampler, consistently indicate no problems with the use of the Claimant's extremities.

[2] The court notes that reference to a psychologist's observations about Claimant's physical condition, on its own, would be insufficient to support the ALJ's finding. However, the court finds that the ALJ's conclusion that the "medical evidence" on the whole fails to substantiate Claimant's allegation is sufficient, as detailed in Part VI. Therefore, the court interprets the ALJ's reference to Dr. Atkinson's record as merely corroborative of his analysis of the medical records.

hospitalization and was not receiving any psychotherapy or mental health treatment.

The ALJ also treated the Claimant's statements that she could shop and prepare simple meals as indicating that she would be able to perform certain types of work notwithstanding her impairments. The ALJ gave similar treatment to the Claimant's alleged depression and anxiety, emphasizing that the "[m]edical records show that the [C]laimant has never been referred to a mental health professional for any treatment." (R. 15). The ALJ also noted that while the Claimant exhibits some anxiety and depression related to the supervision of her severely impaired child, no evidence existed that she ever received treatment from a psychiatrist, psychologist, or any other type of mental health professional for anxiety or depression. For these reasons, the ALJ concluded that the Claimant's alleged mental problems do not rise to the level of a disabling condition.

The ALJ gave little weight to Dr. Wampler's Medical Source Opinion assessment and his opinion in a November 17, 2008 letter that the Claimant would have a "very hard time holding down any type of job." The ALJ acknowledged that controlling weight must be given to a treating physician's medical opinion *if* that opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and . . . is 'not inconsistent' with other substantial evidence." Nevertheless, upon review of the Record, the ALJ gave Dr. Wampler's opinion "very little credence [because] it [was] *unsupported* and *inconsistent* with his treatment records and all other medical evidence" (R. 16) (emphases added). The ALJ emphasized the inconsistency of Dr. Wampler's conclusion as compared to his own earlier treatment records: "Dr. Wampler's opinion was not supported by specific information that would lead to the conclusion that the claimant was so limited, and *was inconsistent with his other findings*, . . ." (R. 16) (emphasis

added). The ALJ noted that Dr. Wampler "cited no specific limitations or any objective findings," which likely referred to the November 17, 2008 letter. Additionally, the ALJ stated that Dr. Wampler's conclusion that the Claimant is disabled is a determination reserved for the Commissioner.

The ALJ ultimately concluded that the Claimant is able to perform sedentary work. Because her past positions as a cook and sewing machine operator range from light to medium in exertional level, the ALJ said the Claimant could not return to any of her past relevant work; however, the Claimant could perform sedentary work as a hand packager or production inspector. Because the Claimant was capable of making a successful adjustment to other work that exists in significant numbers in the regional and national economy, the ALJ found that the Claimant was not disabled within the meaning of the Social Security Act.

## VI. DISCUSSION

**A. The ALJ properly articulated good cause for assigning little weight to the opinion of treating physician Dr. Steven Wampler.**

On appeal, the Claimant first argues that the ALJ failed to properly articulate good cause for according less weight to the opinion of treating physician Dr. Steven Wampler. "It is well-established that 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "'Good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d

1232, 1241 (11th Cir. 2004). The ALJ must clearly articulate his reasons for disregarding a treating physician's opinion. *Id.*

The ALJ acknowledged that while he was "fully cognizant of the weight to be accorded to a treating physician under 11th Circuit law," he determined that Dr. Wampler's opinion was not entitled to substantial weight. (R. 16). The ALJ properly articulated good cause for assigning little weight to Dr. Wampler's opinion. The ALJ correctly noted that Dr. Wampler's conclusion that Claimant "would have a very hard time holding down any type of job due to her multiple health problems" is an issue reserved to the Commissioner because it is a dispositive administrative finding. *See* 20 CFR §§ 404.1527(e), 416.927(e). The Commissioner "will not give any special significance" to a physician's opinion on an issue reserved to the Commissioner, including an opinion on whether the Claimant is disabled. 20 CFR § 404.1527(e)(3).

The ALJ also properly gave Dr. Wampler's opinion "very little credence" because it was "unsupported and inconsistent with his treatment records and all other medical evidence." (R. 16). Although Dr. Wampler has treated the Claimant for multiple impairments, including COPD, bronchitis, and arthritis, he attributed "bilateral leg weakness" as the *only* clinical finding in support of the Claimant's alleged physical limitations on his February 2009 Medical Source Opinion form. (R. 661). However, Dr. Wampler's diagnosis of bilateral leg weakness does not support his recommendation that the Claimant sit for only thirty minutes at a time for a total of two hours of per eight-hour workday. (R. 661). Other than Claimant's isolated complaints of back pain and prescriptions for pain medication, her medical records are largely devoid of any diagnoses concerning severe back pain, leg weakness, or trouble walking, sitting, or standing. To the contrary, the recorded observations of several other treating physicians, reflecting that the

Claimant exhibited no pain behavior in her leg and exhibited a normal gait, directly contradict Dr. Wampler's bilateral leg weakness diagnosis.

Specifically, the medical diagnoses of Dr. Holden, Dr. Walker, and even the Claimant's regular treating physician, Dr. Wampler, identify no problems with the use of her extremities. On January 4, 2008, Dr. Holden noted that the Claimant's extremities exhibit "[g]ood muscle tone," that she "[m]oves all extremities without difficulty," and that her "[g]ait is normal." (R. 591). Dr. Holden's observations in early 2008 are consistent with two previous diagnoses in 2007 at the same practice, recorded by a certified nurse practitioner, which state the Claimant exhibited "[n]o muscle weakness" in her extremities, "no back pain," and "[n]o pain, burning or weakness in the arms and legs." (R. 592-97). Physical examinations in 2008 by Dr. Walker reveal that the Claimant appeared "well-developed" and "in no acute distress." (R. 599-600). The medical records from the Claimant's regular evaluations by Dr. Wampler, which occurred on a monthly or even bi-monthly basis in 2007 and 2008, frequently denote "no injury" in the musculoskeletal category, which includes the back, shoulder, clavicle, arm, elbow, forearm, wrist, hand, hip, thigh, knee, leg, ankle, and foot. In discrediting Dr. Wampler's Medical Source Opinion, the ALJ stated that the "results of objective tests and examinations do not show the existence of medical impairments that can reasonably be expected to produce the pain and limitations alleged by the [C]laimant." The court cannot say this statement is unsupported by substantial evidence in light of the diagnoses of these various treating physicians.

In addition, the court observes that the limitations projected in Dr. Wampler's Medical Source Opinion are suspect in light of Dr. Wampler's indication that the form was completed "based primarily on the [C]laimant's subjective complaints." (R. 662). This admission casts

17

serious doubt about whether the conclusions projecting the length of time the Claimant can supposedly sit, walk, and stand are based on *objective* medical evidence. As elaborated above, the totality of the objective medical evidence in the Record tends to contradict Dr. Wampler's conclusions about the brief lengths of time Claimant can sit, stand, or walk because of bilateral leg weakness. The court finds that substantial evidence supports the ALJ's decision to attribute little weight to Dr. Wampler's opinion because, as the ALJ noted, Dr. Wampler's conclusion that the Claimant is unable to work is unsupported and inconsistent with his own medical records and the Claimant's medical records as a whole.

**B. The ALJ properly considered the combined effects of the Claimant's multiple impairments.**

The ALJ has a basic obligation to fully and fairly develop the record. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1986). The ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* at 735. The Claimant argues that the ALJ did not properly consider the combined effects of her multiple impairments. When a claimant suffers from multiple impairments, all of the impairments should be considered in determining her RFC because

> a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

*Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). Moreover, a decision that focuses on one aspect of the evidence, while disregarding or failing to explicitly discredit other contrary evidence, is not based on substantial evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th

Cir. 1986). Here, the ALJ did properly consider the combination of the Claimant's multiple impairments when determining her RFC.

The ALJ found that the Claimant suffers from multiple impairments but concluded that while the Claimant's impairments are "'severe' in combination within the meaning of the Regulations. . . [the impairments are] not 'severe' enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (R. 13). In *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002), the court held that the ALJ's statement that

> "the medical evidence establishes that [the Claimant] had [several injuries] which constitute a 'severe impairment,' but that he did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4"

sufficiently indicated that the ALJ "considered the combined effects of [the Claimant's] impairments" (emphasis in original). *See also Jones v. Dept. of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (holding that the following statement by an ALJ evidenced consideration of the combined effect of a claimant's impairments: while "[the Claimant] has severe residuals of an injury to the left heel and multiple surgeries on that area, [the Claimant does not have] an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4."). Because the ALJ included a statement nearly identical to those in *Wilson* and *Jones* when assessing whether the Claimant's impairments satisfied the requirements of a listed impairment, he properly considered the combined effects of the Claimant's multiple impairments. The court cannot say that such conclusion lacked substantial evidence to support it.

## VI.  CONCLUSION

For the above reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and is therefore AFFIRMED. The court will enter a separate Order in accordance with this Memorandum Opinion.

DONE and ORDERED this 6th day of January, 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE